UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE BRICKLAYERS AND
ALLIED CRAFTWORKERS, LOCAL 5 NEW
YORK RETIREMENT, WELFARE, LABOR
MANAGEMENT COALITION; APPRENTICE
TRAINING AND JOURNEYMEN
UPGRADING FUNDS; and BRICKLAYERS
AND ALLIED CRAFTWORKERS LOCAL 5
NEW YORK,                                          No. 17-CV-3662 (KMK)

                         Plaintiffs,               OPINION & ORDER

            v.

PREFERRED MASONRY RESTORATION,
INC. and INTERNATIONAL FIDELITY
INSURANCE COMPANY,

                         Defendants.

Appearances:

Dana L. Henke, Esq.
Steven H. Kern, Esq.
Barnes, Iaccarino & Shepherd, LLP
Elmsford, NY
*Counsel for Plaintiffs*

Kevin T. Conklin, Esq.
Mead, Hecht, Conklin & Gallagher
White Plains, NY
*Counsel for Defendant Preferred Masonry Restoration, Inc.*

Thomas P. Stevens, Esq.
Flamm Walton Heimbach
Blue Bell, PA
*Counsel for Defendant Preferred Masonry Restoration, Inc.*

Matthew E. Ward, Esq.
The Ward Firm, PLLC
Baldwinsville, NY
*Counsel for Defendant International Fidelity Insurance Company*

KENNETH M. KARAS, United States District Judge:

Trustees of the Bricklayers and Allied Craftworkers, Local 5 New York Retirement, Welfare, Labor Management Coalition ("Trustees"), Apprentice Training and Journeymen Upgrading Funds ("Funds"), and Bricklayers and Allied Craftworkers Local 5 New York ("Local 5") (collectively, "Plaintiffs"), bring the instant Action against Preferred Masonry Restoration, Inc. ("PMRI") and the International Fidelity Insurance Company ("IFIC") (collectively, "Defendants"), seeking recovery of unpaid benefits on multiple grounds, including, as relevant here, the Miller Act, 40 U.S.C. § 3131 *et seq.* (*See* Compl. (Dkt. No. 8).) Before the Court is IFIC's Motion for Summary Judgment as to the Miller Act claim, (Not. of Mot. (Dkt. No. 53)), and Plaintiffs' Motion To Amend, (Not. of Mot. (Dkt. No 60)). For the reasons that follow, IFIC's Motion is denied, and Plaintiffs' Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from IFIC's statement pursuant to Local Civil Rule 56.1, (Statement of Material Facts in Supp. of Mot. ("IFIC 56.1") (Dkt. No. 58)), Plaintiffs' (unnumbered) response to that statement, (Statement of Facts ("Pls.' 56.1") (Dkt. No. 65-1)), and the admissible evidence submitted by the Parties.[1]

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same). Where possible, the Court relies on the facts as presented in the Parties' 56.1 statements.

The Court recounts here only those facts necessary for consideration of the instant Motions.[2]

S.J. Thomas Co., Inc. ("SJTC"), not a party to this Action, is a general contracting company. (IFIC 56.1 ¶ 1.) SJTC was the prime contractor on a federally-funded restoration project (the "Project") in Hyde Park, New York. (*Id.* ¶¶ 3–5.) Pursuant to the Miller Act, SJTC was required to post a labor and material payment bond on the Project, and, accordingly, on May 26, 2015, Defendant IFIC, as SJTC's agent and surety, issued Payment Bond No. PAIFSU0630565 (the "Bond"), with a penal sum of $2,646,000.00. (*Id.* ¶¶ 6–7.)

Defendant PMRI is a masonry restoration contractor. (*Id.* ¶ 2.) On May 14, 2015, SJTC and PMRI entered into a contract (the "Contract") in which PMRI agreed to do certain work and provide certain material for SJTC on the Project. (*Id.* ¶ 5.) PMRI thereafter employed members of Plaintiff Local 5 — a labor organization — to perform work on the Project. (Pls.' 56.1, at 1; Compl. ¶ 8.)

On or about August 15, 2016, PMRI abandoned the Project and was thereafter removed. (IFIC 56.1 ¶ 10; Pls.' 56.1, at 2.) On August 17, 2016, SJTC contracted with Local 5 to complete PMRI's portion of the Project. (IFIC 56.1 ¶ 8; Pls.' 56.1, at 2.) That agreement provided that SJTC "would pay wages and fringe benefits in accordance with the [Local 5 collective bargaining agreement]." (Pls.' 56.1, at 2.)

---

However, direct citations to the record are used where the Parties' 56.1 statements do not include relevant facts or do not accurately characterize the record.

[2] Further factual background may be found in the Court's recent opinion in a related case, *U.S. ex rel. Preferred Masonry Restoration, Inc. v. Int'l Fidelity Ins. Co.*, No. 17-CV-1358, 2019 WL 4126473, at *1 (S.D.N.Y. Aug. 30, 2019).

Plaintiffs allege that PMRI failed to pay Local 5's workers various benefits owed to them for the period June 5, 2016 to August 14, 2016. (IFIC 56.1 ¶ 9; *see also* Compl. ¶¶ 15–16, 18.) Plaintiffs further allege that, as required by the Miller Act, it sent SJTC and IFIC numerous timely notices of claim for payment. (Pls.' 56.1, at 2; *see also* Compl. ¶ 17.) IFIC strongly disputes this on the ground that Local 5's communications were insufficient, improperly served, and untimely. (IFIC 56.1 ¶¶ 11–16; *see also* Aff. of Matthew E. Ward, Esq. in Supp. of Mot. ("Ward Aff.") Exs. C–P (Parties' correspondence) (Dkt. No. 54); Decl. of Dana L. Henke in Supp. of Mot. ("First Henke Decl.") Ex. K (Parties' correspondence) (Dkt. No. 62).)[3]

B. Procedural History

Plaintiffs filed the Complaint on May 17, 2017. (Compl. (Dkt. No. 8).)[4] The same day, Plaintiffs filed a Statement of Relatedness indicating that this Action is related to *U.S. ex rel. Preferred Masonry Restoration, Inc. v. Int'l Fidelity Ins. Co.*, No. 17-CV-1358 (S.D.N.Y.). (Dkt. No. 9.)

On August 10, 2017, IFIC filed an Answer, including a crossclaim against PMRI. (Dkt. No. 17.) On October 3, 2017, PMRI filed an Answer, including a crossclaim against IFIC. (Dkt. No. 20.) On October 12, 2017, IFIC filed an Answer to PMRI's crossclaim. (Dkt. No. 23.)

On October 10, 2017, the Court held an initial conference and entered a case management plan. (Dkt. No. 21.) On October 3, 2018, following conclusion of discovery, the Court held a status conference and adopted a briefing schedule for the instant Motions. (Dkt. No. 52.)

On November 2, 2018, IFIC filed the instant Motion for Summary Judgment. (Not. of Mot.; Ward Aff.; Aff. of Stephen S. Thomas in Supp. of Mot. ("Thomas Aff.") (Dkt. No. 55);

---

[3] The Court describes these putative notices of claim in detail *infra* Section II.A.3.

[4] The Complaint was initially incorrectly filed on May 16, 2017. (Dkt. No. 1.)

Aff. of Kathleen Maloney in Supp. of Mot. ("Maloney Aff.") (Dkt. No. 56); Mem. of Law in Supp. of Mot. ("IFIC Mem.") (Dkt. No. 57); IFIC 56.1.)

On the same date, Plaintiffs filed the instant Motion To Amend. (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Pls.' Mem.") (Dkt. No. 61); First Henke Decl.)

On November 29, 2018, Plaintiffs filed a response in opposition to IFIC's Motion for Summary Judgment. (Decl. of Dana L. Henke in Supp. of Mot. ("Second Henke Decl.") (Dkt. No. 63); Aff. of Dave Williams in Opp'n to Mot. ("Williams Aff.") (Dkt. No. 64); Mem. of Law in Opp'n to Mot. ("Pls.' Opp'n") (Dkt. No. 65); Pls.' 56.1 (Dkt. No. 65-1).)

On November 30, 2018, IFIC filed a response in opposition to Plaintiffs' Motion To Amend. (Mem. of Law in Opp'n to Mot. ("IFIC Opp'n") (Dkt. No. 66).)

## II. Discussion

As relevant here, Plaintiffs bring a claim of failure to pay benefits against IFIC, pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.* (Compl. ¶¶ 30–34.)[5] IFIC seeks dismissal of the claim on grounds that Plaintiffs failed to provide sufficient, proper, and timely notice; that Plaintiffs referenced an incorrect bond number in the Complaint; and that Plaintiffs failed to properly caption the Action. (*See* IFIC Mem. 9 *et seq.*) Plaintiffs argue that notice was sufficient, proper, and timely, (*see* Pls.' Opp'n 4 *et seq.*), and seek to amend to correct the bond number and case caption, (*see* Pls.' Mem. 7 *et seq*).

### A. Motion for Summary Judgment

#### 1. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

---

[5] Plaintiffs also bring claims against PMRI pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (Compl. ¶¶ 13–29.) These claims are not presently before the Court.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same). "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (citation and quotation marks omitted). "It is the movant's burden

to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373

F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the nonmovant's claim," in which case "the nonmoving party must come

forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to

avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114,

123 (2d Cir. 2013) (citation, alteration, and quotation marks omitted). Further, "[t]o survive a

[summary judgment] motion," the nonmovant must "create more than a 'metaphysical'

possibility that his allegations were correct; he need[s] to 'come forward with specific facts

showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d

Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the

pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014)

(quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (same).

And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by

the record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (citation and quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc*., 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010). Even where a plaintiff's "evidence may be thin, [his] own sworn statement is adequate to counter

summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003).

### 2.  Applicable Law

"The Miller Act establishes payment protection for persons supplying labor and materials on federal construction projects." *U.S. ex rel. Midtown Contracting, LLC v. Aim Steel Int'l, Inc.*, No. 15-CV-966, 2016 WL 4991554, at *2 (E.D.N.Y. Aug. 19, 2016) ("*Aim Steel*") (citation omitted); *see also U.S. ex rel. QSR Steel Corp. v. Safeco Ins. Co. of Am.*, No. 14-CV-1017, 2015 WL 4393576, at *1 (D. Conn. July 16, 2015) ("The Miller Act is designed to provide an alternate remedy to subcontractors on government contracts, who cannot pursue traditional remedies, such as suing directly on the contract or securing a mechanic's lien against the improved property." (citing, inter alia, *F. D. Rich Co. v. U.S. ex rel. Indus. Lumber Co.*, 417 U.S. 116, 122 (1974))). The Act requires, as relevant here, that contracts for "the construction, alteration, or repair of any public building or public work of the Federal Government" be accompanied by a "payment bond . . . for the protection of all persons supplying labor and material in carrying out the . . . contract." 40 U.S.C. § 3131(b). "To enforce their right of payment for labor or materials, subcontractors and materials suppliers may institute an action in federal court against a contractor or its surety in the name of the United States." *U.S. ex rel. Levinson & Santoro Elec. Corp. v. Am. Home Assur. Co.*, No. 08-CV-741, 2009 WL 1940442, at *3 (E.D.N.Y. July 2, 2009) (citing, inter alia, 40 U.S.C. § 3133(b)(1)); *see also Aim Steel*, 2016 WL 4991554, at *2 (noting that the Miller Act "permits a second-tier subcontractor to recover amounts owed to it by a first-tier subcontractor by bringing an action against a prime contractor on the payment bond" (citation omitted)).

"To effectuate these remedial purposes, the Miller Act should be construed liberally." *Empire Enters. JKB, Inc. v. Union City Contractors, Inc.*, 660 F. Supp. 2d 492, 506 (W.D.N.Y.

2009) (citing *J.W. Bateson Co. v. U.S. ex rel. Bd. of Trs. of Nat'l Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 594 (1978)); *see also F. D. Rich*, 417 U.S. at 124 ("The Miller Act is highly remedial and entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." (citation, quotation marks, and alterations omitted)); *U.S. ex rel. Hallmark Elec. Supplies Corp. v. Sunlight Elec. Contracting Corp.*, No. 06-CV-1522, 2007 WL 9710313, at *3 (E.D.N.Y. Sept. 10, 2007) ("Because of the Act's remedial intent, the statute should be interpreted broadly." (collecting cases)).

However, notwithstanding the Miller Act's remedial intent, to "protect prime contractors against the potential for double payment," the Act also "include[s] a notice requirement as a condition precedent to commencing any such action." *Aim Steel*, 2016 WL 4991554, at *2. The subcontractor must "giv[e] written notice to the contractor within 90 days from the date on which [it] did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). This notice "must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." *Id.* Put differently, the notice must inform the contractor, whether "expressly or by implication," that the subcontractor is looking to it for payment. *U.S. ex rel. Charles R. Joyce & Son, Inc. v. F. A. Baehner, Inc.*, 326 F.2d 556, 558 (2d Cir. 1964) ("*Joyce*") (citation omitted). Further, notice must be provided "(A) by any means that provides written, third-party verification of delivery to the contractor at any place the contractor maintains an office or conducts business or at the contractor's residence; or (B) in any manner in which the United States marshal . . . may serve summons." 40 U.S.C. § 3133(b)(2). These "mandatory" notice requirements are "a strict condition precedent to the existence of any

right of action upon the prime contractor's bond." *U.S. ex rel. Gen. Elec. Co. v. H. I. Lewis Constr. Co.*, 375 F.2d 194, 201 (2d Cir. 1967). As the Second Circuit has phrased it, "to eliminate the minimal [notice] requirement . . . would entirely emasculate the statute." *Joyce*, 326 F.2d at 558.

Assuming the notice requirements are met, to state a claim under the Miller Act, a plaintiff "need only plead that: (1) it provided labor or materials in performing work provided for in a contract for which a payment bond is furnished and (2) it has not been paid in full for the work performed." *M.E.S., Inc. v. Safeco Ins. Co. of Am.*, No. 10-CV-2798, 2014 WL 2931398, at *4 (E.D.N.Y. June 27, 2014) (quotation marks omitted) (quoting *Empire*, 660 F. Supp. 2d at 507); *see also U.S. ex rel. Polied Envt'l Servs., Inc. v. Incor Group, Inc.*, 238 F. Supp. 2d 456, 460 (D. Conn. 2002) ("To establish a prima facie case . . . , a labor or material supplier must prove that (1) the labor or materials were supplied in prosecution of the work provided in the contract; (2) the supplier has not been paid; (3) the supplier had a good faith belief that the labor or materials were intended for the specified work; and (4) the jurisdictional requisites of the Miller Act have been met." (collecting cases)). "Stated differently, the plaintiff must show that it complied with its contractual obligations under the subcontract, that it furnished labor in connection with the government project[,] and that full payment has not been made for that work." *Empire*, 660 F. Supp. 2d at 507 (citation omitted).

### 3.  Analysis

IFIC argues the putative notices of claim sent by Local 5 to SJTC were facially insufficient, improperly served, and untimely. (IFIC Mem. 9–18.) The Court addresses these arguments in reverse order.

As an initial matter, notice under the Miller Act must be provided, as relevant here, "within 90 days from the date on which the person . . . performed the last of the labor . . . for which the claim is made." 40 U.S.C. § 3133(b)(2). Here, Plaintiffs claim payment for the period June 5, 2016 to August 14, 2016, that is, the period it performed work on the Project while contracting with PMRI. (Compl. ¶¶ 15–16, 18.) Accordingly, the Parties have submitted correspondence for the period following PMRI's removal from the Project on August 15, 2016. (*See* Ward Aff. Exs. C–P; First Henke Decl. Ex. K.) Two letters within this grouping of correspondence are untimely, as they were sent more than 90 days after August 15, 2016. (*See* Ward Aff. Ex. O (Dec. 27, 2016 correspondence); *id.* Ex. P (Apr. 20, 2017 correspondence).)

As to the Parties' timely correspondence, IFIC argues that Local 5 failed to comply with the Miller Act's requirement that notice (1) be provided "by any means that provides written, third-party verification of delivery" and (2) be sent "to the contractor at any place the contractor maintains an office or conducts business." (IFIC Mem. 14–16 (quoting 40 U.S.C. § 3133(b)(2)).) In IFIC's view, these provisions mean that Miller Act notice must be sent to a physical location by means providing for third-party verification, and, therefore, that Local 5' attempts to provide notice via email is improper. (*Id.*)

This argument misses the mark. IFIC points to no case in which a court in the Second Circuit has dismissed a Miller Act claim for failure to adhere to the Act's technical requirements as to the form notice must take. Indeed, IFIC does not cite any case law at all as to this argument. (*See* IFIC Mem. 14–16; IFIC Opp'n 19–20.) To the contrary, as far back as 1940, the Supreme Court emphasized that "the purpose of [the Miller Act's] provision as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been

given and received." *Fleisher Eng'g & Constr. Co. v. U.S. ex rel. Hallenbeck*, 311 U.S. 15, 19 (1940). That understanding has been echoed by the Second Circuit and other courts. *See Gen. Elec. Co.*, 375 F.2d at 197 n.3 ("[T]he decisions are legion that [the Miller Act's] technical provisions . . . do not bar a recovery if in fact a timely notice of some sort is given."); *U.S. ex rel. Greenwald-Supon, Inc. v. Gramercy Contractors, Inc.*, 433 F. Supp. 156, 163 (S.D.N.Y. 1977) ("Although the precise words of [the Miller Act] require notice by registered mail, it has been held that the technical provisions of the Miller Act regarding notice do not bar recovery if in fact timely notice of some sort is given." (citing *Gen. Elec. Co.*)); *see also Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1437 (11th Cir. 1996) (noting that "courts have been somewhat lenient about enforcing the Act's requirements concerning the method by which such notice is given"); *U.S. ex rel. Consol. Elec. Distribs. Inc. v. Altech, Inc.*, 929 F.2d 1089, 1093 (5th Cir. 1991) ("*Altech*") (holding that a supplier's oral notice, combined with the general contractor's responsive letter of acknowledgment, may suffice to provide Miller Act notice); *U.S. ex rel. Moody v. Am. Ins. Co.*, 835 F.2d 745, 747–48 (10th Cir. 1987) ("Most circuit courts have not deemed a notice insufficient solely on the basis that it was not sent by a means prescribed by the Act." (citations omitted)); *U.S. ex rel. Cummins-Wagner Co., Inc. v. Fid. & Deposit Co. of Md.*, No. 13-CV-164, 2013 WL 4829051, at *4 (D. Md. Sept. 9, 2013) (stating that, notwithstanding the Miller Act's "provisions regarding the manner and method of providing notice, courts have repeatedly held that notice is sufficient when the contractor has actual notice" (collecting cases)). Further, the only court in the Second Circuit to have considered whether emails provided sufficient Miller Act notice engaged directly with the substantive question whether the emails in fact provided actual and timely notice *without* addressing the question whether the emails were technically proper under 40 U.S.C. § 3133(b)(2). *See Aim Steel*, 2016 WL 4991554, at *3

(holding on the merits that emails sent by supplier to general contractor did not provide sufficient notice without considering whether email communication was itself improper). This approach has largely been taken by courts outside the Second Circuit. *See U.S. ex rel. Interstate Elec. Supply, Inc. v. Anderson Elec. Co.*, No. 12-CV-211, 2014 WL 905417, at *4 (M.D. Ga. Mar. 7, 2014) (holding on the merits that email correspondence between supplier and general contractor provided sufficient Miller Act notice without considering question whether email communication was technically improper); *Cummins-Wagner*, 2013 WL 4829051, at *4 (same); *but see U.S. ex rel. Potomac Valley Brick & Supply Co. v. Grahams Constr., Inc.*, No. 13-CV-2032, 2014 WL 11955407, at *4 n.2, *7–9 (D. Md. May 13, 2014) (noting in footnote that the plaintiff "concede[d] that the email does not satisfy the notice requirements for the Miller Act" and then concluding, on the merits, that the communications were untimely), *aff'd*, 585 F. App'x 173 (4th Cir. 2014).

The Court therefore proceeds to consider whether the Parties' timely correspondence in fact placed SJTC on notice of Plaintiffs' Miller Act claim. On August 17, 2016, two days after PMRI was removed from the Project, Local 5 emailed SJTC, stating:

> [T]he last payment received from [PMRI] was on July 6, 2016 . . . . The delinquency from June 1st through 8/14/16 is currently $82,564.76. I am also attaching a Project Agreement. This will allow you to pay the men directly and pay the fringe benefits to [Local 5] for any overtime.

(Ward Aff. Ex. D (emphasis added).) SJTC acknowledged receipt and requested that Local 5 "send [it] the breakdown" of money owed to Local 5. (*Id.*) The same day, SJTC emailed PMRI stating that it had "been contacted by . . . [Local 5] that PMRI has an outstanding delinquent balance due to Local 5." (First Henke Decl. Ex. K, at 6 (Aug. 17, 2016 correspondence).) On August 19, 2016, Local 5 emailed SJTC, attaching a letter it had earlier sent to PMRI stating:

> When a bond is not [sic] put on at the beginning of a job, it is [Local 5's] policy to notify the General Contractor of any outstanding benefits due . . . as the project nears completion. This is to <u>notify you [PMRI] that we [Local 5] are informing [SJTC] that benefits are owed</u> from 6/5/16 through 8/7/16 in the amount of $75,679.56.

(Ward Aff. Ex. F (emphasis added).)  SJTC acknowledged receipt.  (*Id.* Ex. G.)  On August 31, 2016, SJTC emailed Local 5 requesting "the amount owed by [PMRI] up to and including 8-19-16," (*id.* Ex. H), to which Local 5 responded that "[t]he total due in fringe benefits . . . is $89,449.96," (*id.* Ex. I).  On September 6, 2016, SJTC sent a letter to PMRI acknowledging, among other things, that SJTC "will ultimately be responsible for" money "owed by PMRI" to Local 5 "if the sum is not paid by PMRI."  (First Henke Decl. Ex. K, at 15; *see also id.* at 16 (repeating that SJTC will seek from PMRI reimbursement of "the monies owed to . . . Local 5 by PMRI that [SJTC] would ultimately be responsible for").  On October 7, 2016, SJTC emailed Local 5, stating:

> Please forward [the] letter/ [i]nvoice for monies owed from [PMRI].  Once received, [we] will forward a release of liens to [Local 5] and [PMRI].  After release of liens are received from both parties, <u>[SJTC] will release a joint check satisfying [the] outstanding balance</u>.

(Ward Aff. Ex. J (emphasis added).)  Local 5 responded to SJTC on October 11, 2016, providing detailed invoices and stating:

> As per our conversation I am attaching the delinquent payment report pertaining to [PMRI].  I want to again <u>thank-you for your assistance and understanding to help satisfy the outstanding balance</u> as our fiscal is coming to a close . . . .  These monies will insure the members['] benefits are paid up to date and they receive vacation checks on time without having to wait . . . .

(*Id.* Ex. K (emphasis added).)  On October 18, 2016, SJTC emailed PMRI, copying the October 11, 2016 correspondence from Local 5, and stating:

> Please see the attached documentation received from [Local 5] and advise us . . . if you agree with [their] calculation.  <u>Failure to respond will result in [SJTC] making the payment to [Local 5]</u> and deducting it from your contract balance.

(*Id.* Ex. M (emphasis added).) Finally, on November 4, 2016, PMRI responded to SJTC, "confirm[ing] the amounts listed [by Local 5]." (*Id.* Ex. N.)

IFIC argues that this correspondence is legally insufficient because it does not make a "demand" of SJTC for payment or "impl[y] that Local 5 was looking to hold [SJTC] or IFIC responsible for payment," and, therefore, is "informative at best." (IFIC Mem. 10–12.) In support, IFIC relies on the Second Circuit's 1964 decision in *Joyce*. (*Id.*; IFIC Opp'n 16.) There, the Second Circuit held, over a dissent from then-Judge Marshall, that the Miller Act's notice requirements were not satisfied where the putative notice-of-claim letters sent by the plaintiff supplier to the general contractor did "not even intimate or suggest that any claim [was] being asserted against the [general] contractor or that [the plaintiff] is looking to the [general] contractor for payment of [its] bill." *Joyce*, 326 F.2d at 558. Rather, the correspondence indicated that the plaintiff was "trying to . . . get [the general contractor] to put pressure on [the subcontractor]." *Id.* at 559.

The Court concludes, viewing the evidence in the light most favorable to Plaintiffs, that a reasonable fact-finder could conclude that the Parties' timely correspondence, viewed in combination, sufficiently provided SJTC with actual notice of Plaintiffs' Miller Act claim. As noted, Miller Act notice is sufficient if it "state[s] with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." 40 U.S.C. § 3133(b)(2). Here, there is no dispute that the Parties' correspondence, which included detailed invoices, stated with substantial accuracy the amount owed, the period covered, and the entity for whom the labor was performed. *Cf. Aim Steel*, 2016 WL 4991554, at *3 (holding Miller Act notice not sufficient where, inter alia, "[n]othing in this email demonstrate[d] that [the supplier] provided [the general contractor] any of the information

required under the notice requirements," such as "the claimed amount owed"). Further, unlike in *Joyce*, where the general contractor denied its liability to the supplier, *see Joyce*, 326 F.2d at 558, here SJTC clearly and repeatedly acknowledged that, if PMRI did not pay Local 5, SJTC would be liable to it for the amount owed. To recap, immediately after PMRI stopped work on the Project, Local 5 made SJTC aware of a "delinquency" in payment owed them by PMRI. (Ward Aff. Exs. D, H; First Henke Decl. Ex. K, at 6.) SJTC acknowledged the delinquency by requesting that Local 5 clarify the amount owed, (Ward Aff. Exs. H, I), and, critically, by telling PMRI that SJTC was "ultimately . . . responsible" for paying Plaintiffs the balance. (First Henke Decl. Ex. K, at 15–16.) Further, SJTC told Local 5 that it would "release a joint check satisfying [the] outstanding balance" owed them by PMRI, (Ward Aff. Ex. J), after which SJTC emailed PMRI to request that it confirm Local 5's bill, stating that PMRI's failure to respond to its inquiry would "result in [SJTC] making the payment to [Local 5] and deducting it from [PMRI's] contract balance," (*id.* Ex. M). Moreover, separate from the written correspondence, Plaintiffs have submitted a sworn affidavit from Dave Williams, Local 5's Secretary-Treasurer during the relevant period, averring that he held telephone conversations with SJTC in which he "always made it clear . . . that [he] was seeking payment from [SJTC] for the delinquency." (Williams Aff. ¶¶ 2, 9.)

Put simply, although the evidence does not suggest that Plaintiffs made an explicit demand for payment to SJTC, a reasonable juror could read the Parties' extensive correspondence as establishing that Local 5 was looking to SJTC for payment, that SJTC understood as much, and that SJTC saw itself as ultimately liable to Local 5. *See Joyce*, 326 F.2d at 668 (noting that notice must be "expressly *or by implication*" that the supplier is looking to the general contractor for payment (emphasis added); *Altech*, 929 F.2d at 1093 (affirming

16

district court's conclusion, following trial, "that disputed testimony concerning an oral demand for payment at a meeting between the supplier and the general contractor, together with the general contractor's follow-up letter, which acknowledged receipt of the materials[,] provided sufficient evidence to satisfy the written notice requirement of the Miller Act"); *Moody*, 835 F.2d at 748 ("Although notice was given through several documents which individually may not have been sufficient, they were sufficient in combination because the contractor had actual notice of the amount due . . . , the party liable for payment[,] and the name of the contractor." (citation omitted)); *U.S. ex rel. San Joaquin Blocklite v. Lloyd E. Tull, Inc.*, 770 F.2d 862, 865–66 (9th Cir. 1985) (holding Miller Act notice sufficient by reading letters in combination); *see also MJJ Trucking LLC v. BD Haulers, Inc.*, No. 09-CV-3201, 2010 WL 2089322, at *4–9 (E.D.N.Y. May 25, 2010) (holding, as to New York law "modeled after the federal Miller Act," that notice to general contractor was sufficient where there was a combination of written invoices and oral conversations between the subcontractor and general contractor that indicated the former was looking to the latter for payment), *aff'd*, 404 F. App'x 535 (2d Cir. 2011); *cf. Aim Steel*, 2016 WL 4991554, at *3 (holding Miller Act notice not sufficient where "[n]othing in this email demonstrate[d] that [the supplier] provided [the general contractor] any of the information required under the notice requirements," such as "the claimed amount owed," and where "the email [did] not notify [the general contractor] either expressly or impliedly, that [the supplier] is asserting a claim directly against it" and only "evince[d] [the general contractor's] awareness that [the subcontractor] owed money to [the supplier]"). After all, as Plaintiffs put it, it may be implausible to suggest that Local 5 was "simply sending numerous emails to [SJTC] for informational purposes only and did not expect payment from [SJTC]." (Pls.' Opp'n 9–10.)

The Court therefore declines to grant summary judgment on Plaintiffs' Miller Act claims on the ground that notice was insufficient, improperly served, or untimely.

## B.  Motion To Amend

IFIC correctly points out that Plaintiffs' Complaint references an incorrect bond number not applicable to the Project, fails to name itself as a "use plaintiff" in the caption, and fails to explicitly reference the Miller Act as a jurisdictional basis for the Action.  (IFIC Mem. 16; IFIC Opp'n 4.)  Plaintiffs concede these defects and seek to amend the Complaint to correct them. (*See generally* Pls.' Mem.)

### 1.  Applicable Law

Federal Rule of Civil Procedure 15 supplies the legal standard applicable to a motion to amend.  Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given by the Court when "justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "[i]t is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *see also Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (same).  "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### 2.  Analysis

IFIC argues only that amendment is futile.  (IFIC Mem. 16; IFIC Opp'n 4.)  "[A]n amendment is futile if the claim proposed to be added would be barred by the applicable statute of limitations."  *Neal v. Wilson*, 239 F. Supp. 3d 755, 758 (S.D.N.Y. 2017) (collecting cases).  A Miller Act claim "must be brought no later than one year after the day on which the last of the

labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). Here, PMRI ceased work on the Project on August 15, 2016; accordingly, to be timely, Plaintiffs' Miller Act claim had to be brought by August 15, 2017. (IFIC 56.1 ¶ 10; Pls.' 56.1, at 2.) The Complaint was timely filed on May 16, 2017, yet, as noted, identifies the wrong bond number, one not applicable to the Project. In IFIC's view, this means that no Miller Act claim was ever alleged against it. (IFIC Mem. 17.) Further, according to IFIC, Plaintiffs may not amend to correct the bond number because the Act's one-year limitations period is considered to be "jurisdictional" and, therefore, "not susceptible to expansion by equitable principles (i.e. relation back)." (*Id.*)

IFIC is correct that district courts in the Second Circuit have stated that "the Miller Act limitations period is jurisdictional in nature." *Diversified Carting, Inc. v. City of New York*, No. 04-CV-9507, 2006 WL 147584, at *10 (S.D.N.Y. Jan. 20, 2006) (citing *U.S. ex rel. Celanese Coatings Co. v. Gullard*, 504 F.2d 466, 468 (9th Cir. 1974)); *see also Levinson*, 2009 WL 1940442, at *4 (same) (collecting cases). However, these brief statements, made in passing and without analysis, are not persuasive. The Supreme Court has explicitly cautioned that "drive-by jurisdictional rulings should be accorded no precedential effect." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (citation and quotation marks omitted). Moreover, the Ninth Circuit has explicitly overruled the *Celanese Coatings* decision cited by *Diversified Carting* and now holds, exactly contrary to IFIC's position, that "the Miller Act's statute of limitations is a claim-processing rule, not a jurisdictional requirement." *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013). Also, it bears noting that the Second Circuit has not considered the question.

The Court does not presently undertake an independent analysis whether the Miller Act's limitations period is jurisdictional. Assuming it is, IFIC is correct that, where a statute of limitations is considered to be jurisdictional, a court may not toll the limitations period in its equitable discretion. *See Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000) ("Not all time limitations are subject to equitable tolling. If Congress enacts a jurisdictional bar to untimely claims, equitable tolling will not apply." (citations omitted)). Where IFIC's argument fails, however, is in recognizing that relation back under Federal Rule of Civil Procedure Rule 15(c) is *not* an equitable doctrine. The Supreme Court has squarely held that Rule 15(c) "mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553 (2010); *see also In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 447 (2d Cir. 2015) (treating relation back and equitable tolling doctrines as distinct). In short, then, the question whether the Miller Act's limitations period is jurisdictional is irrelevant; Rule 15(c) relation back is applicable to Miller Act claims. *See U.S. ex rel. Heavy Materials, LLC v. Tip Top Constr. Corp.*, No. 15-CV-8, 2016 WL 2992116, at *4–6 (D.V.I. May 20, 2016) (rejecting argument identical to that made here and concluding that Rule 15(c) relation back applies to Miller Act claims); *see also U.S. ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070, 1073–74 (9th Cir. 1989) (applying relation back analysis to Miller Act claim); *ACC Roofing, Inc. v. Dix & Sons Constr. Co., Inc.*, No. 91-CV-1242, 1991 WL 224066, at *2 (E.D. Pa. Oct. 24, 1991) (same).[6]

---

[6] IFIC also argues that "the Second Circuit has declared that the 'relation back' doctrine is an equitable principle that is not available when a statute of repose, such as the Miller Act, is involved." (IFIC Mem. 17–18 (citing *Police & Fire Ret. Sys. v. Indymac MBS, Inc.*, 721 F.3d 95, 106–10 (2d Cir. 2013)).) This argument is triply flawed. First, IFIC does not cite any case for the proposition that the Miller Act's limitations period is a "statute of repose" as opposed to a

Under Rule 15(c), an amended pleading relates back to the date of the original filing when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (citation and quotation marks omitted). "Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs." *Id.*

Here, as Plaintiffs concede, (Pls.' Mem. 11), Plaintiffs identified an incorrect bond number in the Complaint, one not applicable to the Project, (*see* Compl. ¶ 32). However, it is uncontested that the Complaint did correctly identify the Project and its location, the Project contract number, and the parties involved in the Project, including the general contractor SJTC, the surety IFIC, and the subcontractor PMRI. (Pls.' Mem. 4, 11.) It is also uncontested that Plaintiffs identified the correct bond number in pre-litigation correspondence with SJTC; on the

---

"statute of limitations." Indeed, the Court is aware of no decision at all, let alone one in the Second Circuit, holding or suggesting that the Miller Act contains a statute of repose. *See Heavy Materials*, 2016 WL 2992116, at *4 (noting that the court found no authority to support the proposition that the Miller Act's limitations period is a statute of repose). Second, IFIC fails to recognize that, in *Police & Fire* (which is not a Miller Act case), the Second Circuit treated Rule 15(c) relation back as *distinct* from the doctrine of equitable tolling. *See* 721 F.3d at 108–10 (first considering whether a particular rule of equitable tolling applied to a particular statute of repose, and then considering, in separate section, "the related, but *distinct* question" whether Rule 15(c)'s relation back doctrine permitted intervention (emphasis added)). Indeed, the Second Circuit in *Police & Fire* explicitly disclaimed that it did "not address . . . whether Rule 15(c) allows 'relation back' of claims otherwise barred by a statute of repose." *Id.* at 110 n.18. Third, even assuming the Second Circuit held what IFIC thinks it did — which it did not — this Court is bound by the Supreme Court's decision in *Krupski*, which, as noted, clarified that Rule 15(c) relation back is not an equitable doctrine.

same day the Complaint was filed, when Plaintiffs filed a statement of relatedness, that described

the dispute (and would have directed IFIC to the complaint in the related case, which did

correctly identify the bond number); and in discovery in this case.  (*Id.* at 6, 8, 11; Pls.' Opp'n

17; *see also* Dkt. No. 9 (statement of relatedness).)  On this record, there can be no serious

argument that IFIC lacked notice of Plaintiffs' Miller Act claim.  Further, Plaintiffs have, with

the exception of identifying the correct bond number, otherwise stated a Miller Act claim.  As

noted, to bring a Miller Act claim, a plaintiff must only plead "that (1) it provided labor or

materials in performing work provided for in a contract for which a payment bond is furnished

and (2) it has not been paid in full for the work performed."  *M.E.S.*, 2014 WL 2931398, at *4.

There is no dispute that each of those elements is plausibly alleged in the Complaint.  The Court

therefore concludes that relation back applies.  *See Heavy Materials*, 2016 WL 2992116, at *7–8

(holding relation back applied in Miller Act case where (1) the defendant "clearly knew what the

[o]riginal [c]omplaint attempted to allege" and (2) the original complaint plausibly stated a

Miller Act claim but incorrectly stated the wrong bond number).

     As to IFIC's related argument that that the Complaint fails to comply with the Miller

Act's requirement that suit be brought "in the name of the United States for the use of the person

bringing the action," (IFIC Mem. 19 (quoting 40 U.S.C. § 3133(b)(3)(A); IFIC Opp'n 11

(same)), this captioning "error is . . . at most a formal irregularity, which ought not to affect the

court's jurisdiction," *Empire*, 660 F. Supp. 2d at 494 n.1 (citations, quotation marks and

alterations omitted); *see also Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467, 469 (6th Cir.

1964) ("It is true that the name of the United States does not appear in the caption of the

complaint, but the caption is not regarded as containing any part of plaintiffs' claim.  We must

look to the allegations of the complaint in order to determine the nature of plaintiffs' cause of

action.  There it clearly appears to be a claim cognizable under the Miller Act." (citation omitted)); *ACC Roofing*, 1991 WL 224066, at *2 ("The lack of reference to the Miller Act by name or citation does not, in and of itself, mean that the complaint does not assert a Miller Act claim.  The failure to name the United States as plaintiff is, at most, a formal irregularity which does not affect jurisdiction." (citations omitted)).  IFIC has identified no case, and the Court has found none, in which a Miller Act claim has been dismissed on this basis.

Accordingly, the Court grants Plaintiffs' Motion To Amend.  Plaintiffs are directed to file an amended complaint that (1) corrects the case caption to comply with 40 U.S.C. § 3133(b)(3)(A); (2) corrects the bond number; and (3) further develops their Miller Act claim.

### III.  Conclusion

For the foregoing reasons, IFIC's Motion for Summary Judgment is denied.  Plaintiffs' Motion To Amend is granted.

Plaintiffs shall file an amended complaint within 30 days of the date of this Opinion. Plaintiffs should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiffs wish the Court to consider — in particular, Plaintiffs should identify the correct bond number and correct the case caption to comply with 40 U.S.C. § 3133(b)(3)(A).  Plaintiffs are further advised that the amended complaint will replace, not supplement, the instant Complaint.  The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiffs wish the Court to consider.

If Plaintiffs fail to abide by the 30-day deadline, Plaintiffs' Miller Act claims may be dismissed with prejudice, and the case will proceed on the remaining claims.

The Clerk of Court is respectfully requested to terminate the pending Motions. (Dkt. Nos. 53, 60.)

SO ORDERED.

DATED:     September 25, 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE